**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:21-CR-00237-1** |
| **JONATHANPETER ALLEN KLEIN,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files this memorandum in support of its motion that defendant Jonathanpeter Allen Klein ("J. Klein") be detained pending trial, pursuant to 18 U.S.C. § 3142(e). As described below, there is a statutory presumption of detention in this matter under Section 3142(e)(3)(C). In addition, consideration of each of the factors set forth in Section 3142(g) amply demonstrates that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community for the purposes of Section 3142(e)(1).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The defendant and his brother, co-defendant Matthew Leland Klein ("M. Klein"), were active participants in the January 6th attack on the U.S. Capitol. Surrounded and assisted by a mob of rioters, the defendants joined together to wrench open a secure door on the Capitol's north side. Behind that door, law enforcement officers tasked with protecting the Capitol and its inhabitants prepared to fend off yet another wave of attacks from the unruly crowd. The defendant's actions created a dangerous scenario that directly interfered with law enforcement's efforts to secure the building. That the defendant did so as part of a second or third wave of attacks--with knowledge

of the mayhem that had already unfolded at the Capitol--shows his reckless disregard for others and the danger posed by the defendant.

On March 19, 2021, both defendants were charged by indictment with:

(i)     conspiring to violate 18 U.S.C. §§ 1512(c)(2) (obstruction of an official proceeding) and 231(a)(3) (obstruction of law enforcement during a civil disorder) [Count One];

(ii)    violating 18 U.S.C. §§ 1512(c)(2) and 2 [Count Two];

(iii)   violating 18 U.S.C. §§ 231(a)(3) and 2 [Count Three];

(iv)    violating 18 U.S.C. §§ 1361 and 2 (felony destruction of government property in excess of $1,000) [Count Four];

(v)     violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) [Count Five]; and

(vi)    violating 18 U.S.C. § 1752(a)(2) (disorderly conduct in a restricted building or grounds) [Count Six].

### *The January 6th Attack on the Capitol*

On January 6, 2021, rioters, which included members and leaders of the Proud Boys,[1] physically breached the Capitol in a bid to stop Congress from carrying out its constitutionally mandated duty of certifying the results of the 2020 Electoral College vote. As result of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted. The Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying

---

[1] As alleged in the indictment, the Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos to public events.

to restore order. Additionally, many media members were assaulted and had cameras and other news-gathering equipment destroyed.

Moreover, the rioters' conduct did, in fact, cause members of Congress to temporarily suspend the certification of the 2020 Electoral College vote, as they evacuated from their respective chambers, at approximately 2:20 p.m., while the United States Capitol Police ("USCP") and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants, including the defendants – depicted in Image 1 below.

Image 1, which taken on January 5, 2021,[2] at the U.S. Supreme Court Building at a rally in support of former President Trump, depicts M. Klein on the left, wearing a backwards red baseball cap, a red, white and blue gaiter, an olive-green jacket, and red and black fingerless gloves. M. Klein is carrying a uniquely worn and frayed Gadsden flag. J. Klein, on the right, is showing a hand signal associated with the Proud Boys and wearing a dark colored baseball cap with the words "Proud Boy," a dark short-sleeve button up shirt with the letters "PB" [i.e., Proud Boys] in yellow lettering on the right breast and "PDX" [i.e., Portland] in yellow lettering on the left breast, a yellow long-sleeve shirt, an American flag gaiter, and a strap for what appears to be a black messenger-style bag or backpack.

---

[2] Image 1, which was taken by a photographer associated with Getty Images, was broadcast on CNN and a version of the image was used by the FBI to solicit information from the public regarding the identities of the two depicted individuals. The image appears on Getty Images' website and its caption, entitled "Trump Supporters Rally In Freedom Plaza In Washington, DC," states: "Washington, DC – JANUARY 05: Members of the Proud Boys stand for their picture near the U.S. Supreme Court Building during a rally supporting President Donald Trump on January 5, 2021 in Washington, DC. Today's rally kicks off two days of pro-Trump events fueled by President Trump's continued claims of election fraud and a last-ditch effort to overturn the results before Congress finalizes them on January 6." *See https://www.gettyimages.com/detail/news-photo/members-of-the-proud-boys-stand-for-their-picture-near-the-news-photo/1294713301* (last visited Mar. 21, 2021).



**Image 1**

Although Image 1 was taken the day before the January 6th riot, it was valuable in assisting with identifying the defendants and tracking each's conduct as they breached the Capitol and assisted and attempted to assist others with doing so. Through USCP, media, and other third-party images and video, the defendants' actions on January 6th have been well-documented. Such conduct on January 6th includes:

- At approximately 2:11 p.m., M. Klein and the defendant appear on a wall within the restricted area of the Capitol grounds. M. Klein, with goggles on his forehead, is on video assisting others with climbing a police barricade to ascend the wall, which is located next to an external stairway that leads from the Capitol's Lower West Terrace to the Upper West Terrance. Below are still images from such video. A portion of the defendant appears visible over M. Klein's right shoulder in the second image.





- At approximately 2:16 p.m., the defendant, with goggles on his forehead, entered the Capitol Building through a doorway which had been forced opened minutes earlier, during the initial breach of the Capitol at approximately 2:13 p.m. After entering the building, the defendant appeared to engage in a celebratory exchange with an identified member of the Proud Boys ("PERSON 1") and displayed a Proud Boys hand signal.

 

 

- At approximately 2:18 p.m., M. Klein entered the Capitol Building through the same door as the defendant. M. Klein waited in the lobby area, presumably for the defendant, before heading south further into the Capitol.

  

- At approximately 2:28 p.m., M. Klein exited the Capitol through a window that had previously been damaged by rioters. The area of the window, at the time of M. Klein's exit, had drawn a large law enforcement officer presence.



- By approximately 2:29 p.m., the defendant and his fellow rioters had made their way from the Senate side of the Capitol, through a line of law enforcement officers in the Capitol's Crypt, to the House of Representatives side. They then proceeded up a flight of stairs to the Capitol's Rotunda.

 

- After the defendants left or had been ejected from the Capitol Building and regrouped, they appear to have been determined that the attack on the Capitol continue. The two made their way to the Capitol's secure North Side Door. Federal law enforcement officers were visible on the other side of the door. Surrounded and aided by other rioters, the defendants attempted to forcibly open the door. Their efforts were successful, and they were able to wrench open the door.

  Videos of this incident shows that, immediately after the door was breached, the defendant moved away from the door and M. Klein donned a pair of goggles and stood directly in front of the door, with his Gadsden flag extended, as law enforcement officers sprayed what appears to be oleoresin capsicum (OC) spray, often referred to as pepper spray, directly at M. Klein's face as law enforcement exited the Capitol building and confronted the crowd.

 

 

The government's evidence also includes, but is not limited to:

- Airline records which show the defendants traveled from Portland, Oregon, to Philadelphia, Pennsylvania, on January 4, 2021, and returned to Portland from Philadelphia on January 8, 2021. The reservation for this trip was made on or about December 29, 2020, and the tickets were paid for in cash.

- The defendant's employer's records which indicate that he requested time off from work from January 4 to 8, 2021, because he and his "brother" were "going to stop the steal rally in DC."[3]

- Messages obtained from M. Klein's Instagram account pursuant to a search warrant in which M. Klein, on or about December 29, 2020, asked another user "[…] You going to DC??" When the other user replied that he/she was not and asked if M. Klein was going, M. Klein responded, "Yep! Got the time off and am going with one of my bro's. stoked af."

- Search warrant records from Google which show that a mobile device associated with the defendant's gmail.com account was present at various locations in and around the U.S. Capitol building on January 6, 2021, for approximately 2½ hours beginning at 2:19 p.m.[4]

- Search warrant records from Google containing information associated with the defendant's gmail.com account, including images that appear to be backup WhatsApp files from a mobile device.[5] Such files include images of, what appear to be, the defendant's Oregon driver's license and learner's permit and:

  o An image file dated January 4, 2021 (redacted and clipped below), of, what appears to be, a "selfie" of the defendant wearing the same clothing as in Image 1 (above) in a public bathroom mirror, displaying a Proud Boys signal. (As described above, airline records show that the defendants traveled from Portland to Philadelphia on January 4, 2021.)

---

[3] During a March 23, 2021 interview with the FBI, the defendant admitted being in Washington, D.C., to attend a rally for former President Trump. However, the defendant denied being at the Capitol and denied that he was the person in Image 1.

[4] A similar record was not found regarding M. Klein's gmail.com account. This can be due to several factors and does not indicate that M. Klein was not present at or within the Capitol.

[5] WhatsApp is a software application which, among other things, allows users to send messages, including images, to other WhatsApp users through devices such as a smart phone or tablet computer. WhatsApp also permits users to backup data to Google Drive.



    o  An image file dated January 4, 2021, of, what appears to be, a reverse image of the defendant riding on a train or other public transportation wearing the same Proud Boys hat and American flag gaiter as in Image 1.



    o  A hazy image file dated November 1, 2020 (clipped below), which includes an image of a person dressed similar to M. Klein in Image 1, including a backwards red baseball cap, a red, white and blue gaiter, an olive-green jacket.



- Search warrant records for M. Klein's Instagram account which included an image file (redacted below), dated November 18, 2020, of a red Ford F350 truck with a frayed Gadsden flag that appears similar to the one in Image 1, but with less stains. (During his March 23, 2021, the defendant identified this truck as M. Klein's truck.)



- Image and video files from M. Klein's Instagram account dated December 24, 2020, that appear to show the defendant wearing the same or similar Proud Boys shirt and hat and U.S. flag gaiter as he is wearing in Image 1, and showing a hand signal associated with the Proud Boys. The image and a clipped still image from the video are below.



***Additional Information as to the Defendant's Dangerousness***

In addition to the government's evidence that the defendants actively participated in the January 6th attack on the Capitol, there is also evidence that the defendant has participated in at least one Proud Boys event during which he was prepared to engage in and/or did engage in violent conduct. Specifically, according to media reports, on September 7, 2020, a group of approximately 100 supporters of former President Trump, including members of the Proud Boys, traveled to the Oregon capitol building in Salem and clashed with approximately 20 Black Lives Matters supporters. *See Police break up scuffles between demonstrators, arrest two in Oregon's state capitol*, Reuters, https://www.reuters.com/article/us-global-race-protests-portland/police-break-up-scuffles-between-demonstrators-arrest-two-in-oregons-state-capital-idUSKBN25Y17P (last visited Mar 21, 2021).

The events in Salem on September 7, 2020, were captured by photographer whose publicly available images appear to show J. Klein in a camouflage short-sleeve shirt and orange long-sleeves, body armor, an orange gaiter, goggles similar to those depicted above, and armed with a yellow baseball bat and paint ball gun. *See Right Wing Groups Organize Large Car Rally Near Portland, Oregon as Counter to Ongoing Anti-Police Protesters*, David Ryder

https://www.photographer-in-seattle.com/right-wing-groups-organize-large-car-rally-near-portland-oregon-as-counter-to-ongoing-anti-police-protesters/ (last visited Mar. 21, 2021).

The identification of the defendant as the person in the orange gaiter was based, in part, on a comparison of facial features – namely, the two moles/blemishes on the defendant's left cheek and the one mole/blemish on his left temple, which appeared similar to those in the defendant's December 2020 Oregon driver's license photo.[6] In addition, during his March 23, 2021 interview, the defendant identified himself as the person in the orange gaiter in the image on the left below.




SALEM, OR – SEPTEMBER 07: Proud Boys members arrive as a pro-Trump caravan rally convenes at the Oregon State Capitol building on September 7, 2020 in Salem, Oregon. The caravan event, billed as the Oregon For Trump 2020 Labor Day Cruise Rally, began in Clackamas and made its way to Oregon State Capitol in Salem. (Photo by David Ryder/Getty Images)



Another image in this series (below) appears to show M. Klein wearing a blue shirt, goggles similar to those depicted above, body armor, and red and black fingerless gloves similar to those in Image 1 and elsewhere above. Close-up images of these gloves, which both have the words "Firm Grip," are also below.

---

[6] The mole/blemish under the defendant's left eye is also visible in closeup images of the defendant in Image 1 and in the "selfie" image of defendant from Google above.



SALEM, OR – SEPTEMBER 07: Proud Boys and other right wing demonstrators pursue counter-protesters after a pro-Trump caravan rally convened at the Oregon State Capitol building on September 7, 2020 in Salem, Oregon. The caravan event, billed as the Oregon For Trump 2020 Labor Day Cruise Rally, began in Clackamas and made its way to the Oregon State Capitol in Salem. (Photo by David Ryder/Getty Images)

 

Another image from this series (below) purports to show the individual believed to be the defendant chasing a fleeing Black Lives Matter supporter, who was ultimately assaulted by the other person in the image. *See Proud boy chases down another BLM supporter, beats them down. Police make arrest*, Sergio Olmos https://twitter.com/MrOlmos/status/1303110704350728193 (last visited Mar. 22, 2021).



SALEM, OR – SEPTEMBER 07: Right wing demonstrators chase a Black Lives Matter protester after a pro-Trump caravan rally convened at the Oregon State Capitol building on September 7, 2020 in Salem, Oregon. The caravan event, billed as the Oregon For Trump 2020 Labor Day Cruise Rally, began in Clackamas and made its way to the Oregon State Capitol in Salem. (Photo by David Ryder/Getty Images)

Other media reporting of the Salem events appears to show the defendant shooting a paintball gun at an unknown target.

 

Search warrant records from Google for information associated with the defendant's gmail.com indicate that the defendant collected images of his involvement in Proud Boy events (including events in August and September 2020 in Portland), including images from the September 7, 2020 Salem event very similar to those above. For example:

14



Additional images associated with the defendant's gmail.com account appear to reflect the defendant's readiness and willingness to engage in violence in support of his political beliefs, as he did on January 6th.  Some examples:

  o  An image file dated March 21, 2020, of, what appears to be, the defendant standing in front of a flag associated with former President Trump and holding a rifle.



  o  Image files dated: March 30, 2020, of, what appears to be, the defendant with a shotgun and M. Klein holding a Gadsden Flag; May 30, 2020, of a pickup truck bearing a Confederate flag image and a rifle in the front; and November 28, 2020, of a baseball bat, metal knuckles, body armor, goggles, a military-style helmet, Proud Boys t-shirt, and other items. The yellow bat and body armor appear similar to those possessed by the defendant at the Salem event.

  

o An image file dated August 29, 2020 (clipped and redacted below), of, what appears to be, the defendant in the back of a truck with other individuals and carrying an expandable baton. A flag associated with former President Trump and a frayed Gadsden flag which appears similar, but not as soiled as the flag in Image 1, are displayed on the truck.



## II.   DISCUSSION

### A.   Legal Standards.

The Bail Reform Act provides for pretrial detention where "no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of any person or the community. 18 U.S.C. § 3142(e). The government must establish risk of flight "by a clear

preponderance of the evidence." *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that the defendant represents a danger to the community "must be supported by clear and convincing evidence." *Id. See also* 18 U.S.C. § 3142(f).

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f)(2)(B). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986).

The United States moves for detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption in favor of detention for an enumerated list of crimes, including destruction of government property, in violation of 18 U.S.C. § 1361.[7] That rebuttable presumption applies to the defendant because 18 U.S.C. § 1361 is specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), and carries a maximum sentence of ten years in prison.

Once a rebuttable presumption is created, it imposes a burden of production on the defendant to offer contrary credible evidence. See *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Even if a defendant can rebut the presumption, the presumption does not disappear; it continues to carry evidentiary weight. "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (internal quotations and citation omitted). Other relevant factors include (1) the nature and circumstances of the offense charged, including whether the offense is crime of violence or a Federal crime of terrorism; (2) the

---

[7] The government notes that the district judges of the District of Columbia have uniformly held in Capitol riot cases that the rebuttable presumption applies to defendants charged under Section 1361. *See, e.g.*, *United States v. Nordean*, Case No. 21-MJ-195 (C.J. Howell, March 3, 2021); *United States v. Powell*, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); *see also United States v. Watkins*, Case No. 21-cr-28-3 (J. Mehta, February 26, 2021); *United States v. Bisgnano*, Case No. 21-CR-36 (J. Nichols, February 26, 2021).

weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.

The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because destruction of government property, in violation of 18 U.S.C. § 1361, is a crime of violence. Moreover, when destruction of government property is "calculated to influence or affect the conduct of government by intimidation or coercion," it also qualifies as a federal crime of terrorism. *See* 18 U.S.C. § 2332b(g)(5)(A) and (B).

As described further below, application of the facts in this case to the detention factors set forth in Section 3142(g) demonstrate that pretrial detention is warranted and necessary in this case.

**B.     No Condition or Combination of Conditions Will Reasonably Assure the Defendant's Appearance or the Safety of the Community**

### *(1)     Nature and Circumstances of the Offense*

The circumstances of the offenses charged in this case overwhelmingly support detention. The defendant is charged by indictment with multiple gravely serious crimes that occurred during an attempt to occupy the Capitol to prevent Congress from carrying out its duty of certifying the Electoral College results. Among the things the Court is statutorily required to consider is whether the defendant is charged with any crimes of violence or terrorism. 18 U.S.C. § 3142(g)(1). He is charged with both.

a.  **The Defendant is Charged with a Federal Crime of Terrorism and a Crime of Violence.**

Felony destruction of property, as charged in the indictment, is a federal crime of terrorism. 18 U.S.C. § 2332b(g)(5), defines "federal crime of terrorism" as an offense that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" and is included in an enumerated list of statutes, which includes 18 U.S.C. § 1361. *See* 18 U.S.C. §§ 2332b(g)(5)(A) & (B). The Grand Jury found probable cause in Count Two of the indictment to believe that the defendant intended to obstruct an official proceeding by committing acts of civil disorder, including unlawfully entering the Capitol grounds or building. As described above, the defendant's determination to "stop the steal" and prevent Congress from performing its lawful duties was made clear by their attempt to forcibly open a secure Capitol door *after* both of the defendants had already been within the Capitol. Moreover, because 18 U.S.C § 1361 is listed in § 2332b(g)(5)(B), there is a rebuttable presumption that no conditions or combination of conditions can assure the safety of the community or the defendants' appearance as required. *See* 18 U.S.C. § 3142(e)(3)(B).

Felony destruction of government property is also a crime of violence. For purposes of the bail statute, as relevant to these offenses, a crime of violence is defined as "an offense that has an element of the use, attempted use, or threatened use of physical force against the person or property of another," if that crime is punishable by ten years or more in prison. *See* 18 U.S.C. § 3142(f)(1)(A) & 16. Section 1361 of Title 18 of the U.S. Code meets those requirements. It is punishable by ten years if the property damage was greater than $1,000, and its elements include the use of physical force against the property of another. *See United States v. Khatallah*, 316 F. Supp. 2d 207, 213 (D.D.C. 2018) (Cooper, J.) (holding that destruction of government property

under a substantially similar statute, 18 U.S.C. § 1363, satisfies a substantially similar elements-clause statute to qualify as a crime of violence).

### b. The Charges and the Defendant's Actions Are Serious.

The charges in indictment are properly characterized as serious due to the possible statutory penalties; the coordinated and determined nature of the defendant's conduct; the defendant's violent actions, along with his capitalization on others' violence throughout January 6th. The defendant was among the first groups of rioters to enter the Capitol after it was breached at approximately 2:13 p.m. (e.g., the defendant entered at 2:16 p.m.). Prior to doing so, M. Klein, the defendant's co-conspirator, assisted others with ascending a wall to gain access to a stairwell leading to the Capitol's Upper West Terrace. And later that day, unsatisfied with their actions thus far, the defendants, surrounded and assisted by other rioters, joined together to wrench open a secure Capitol door and force law enforcement officers to fend off yet another wave of rioters attempting to gain entry to the Capitol.

As noted above, approximately 139 law enforcement officers were assaulted throughout the attack on the Capitol. The defendants created a dangerous situation in which additional law enforcement officers could have been injured. Though the government is unaware of any officers who were in this instance, such lack of injuries does not mitigate the seriousness of the defendant's actions. That the defendant engaged in such conduct--with knowledge of the mayhem that had already unfolded at the Capitol--shows his reckless disregard for others and the danger he poses.

The defendant's conduct on January 6th demonstrated a flagrant disregard and malice towards the rule of law and a willingness to confront law enforcement officers and use force to promote his political beliefs. Accordingly, the nature and circumstances of the offenses favor detention.

### *(2)    Weight of the Evidence Against the Defendant*

As described above, the weight of the evidence against the defendant is very strong and consists of, among other things, videos and images of the defendant's conduct on January 6th, travel records, and items from defendants' online accounts. Considering that he is facing a robust government case against him and the potential period of incarceration he is facing, the defendant has a powerful motivation to flee from the authorities and to forcibly resist his recapture. The evidence is clear, convincing, and compelling. The weight of the evidence heavily favors the defendant's detention.

### *(3)    History and Characteristics of the Defendant*

The defendant's history and characteristics likewise support pretrial detention. The defendant has demonstrated a preparedness and willingness, if not eagerness, to engage in violence against those with whom he disagrees, be it Black Lives Matters supporters or the United States government. The defendant's dress and weapons at the September 7, 2020 event in Salem appear to encapsulate his apparent desire to engage in violence with those holding opinions different than his own.



In addition, as described above, the defendant was involved with helping to chase down a Black Lives Matter supporter who was then assaulted by the person with whom the defendant was

with. The defendant was also photographed appearing to shoot paintballs at unidentified targets at the event.

Moreover, images associated with his gmail.com account reflect that the defendant conflates political opinions and expression with preparedness/use of violence. This is most visible in defendant's posing in front of a Trump flag with a rifle and baton and his carrying of a shotgun while M. Klein displayed a Gadsden flag, as well as in his conduct in Salem on September 7th and at the Capitol on January 6th.

Finally, the government is unaware of any expression of remorse or contrition by the defendant or any reason why the defendant could not or would not engage in similar behavior again. This factor weighs in favor of detention for the defendant.

### (4)   *Nature and Seriousness of the Danger to Any Person or the Community*

The defendant's above-described conduct on and prior to January 6th demonstrates that he is a dangerous powder keg, who is prepared to forcibly oppose and engage in violence against those with whom he disagrees, including the government of the United States. Like the others, this factor weighs in favor of the defendant's detention.

III.     **CONCLUSION**

The statutory presumption of detention is appropriate in this matter. Moreover, application of Section 3142(f)(1)'s statutory factors in this case ably proves that no condition or combination of conditions will ensure the appearance of the defendant as required or the safety of any individual or the community. Accordingly, the defendant should be detained pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793


By:     */s/ Christopher K. Veatch*
CHRISTOPHER K. VEATCH
IL Bar No. 6276097 (Detailee)
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006
LUKE M. JONES
VA Bar No. 75053
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(312) 886-3389
christopher.veatch@usdoj.gov