**Michelle Sweet, OSB No. 060015**
**Assistant Federal Public Defender**
101 S.W. Main, Suite 1700
Portland, OR  97204
Tel:     (503) 326-2123
Fax:     (503) 326-5524
Email: michelle_sweet@fd.org

**Attorney for Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 1:21-cr-00237-RDM-1 |
| Plaintiff, | **MOTION FOR RELEASE TO HOME DETENTION** |
| vs. | |
| **JONATHANPETER ALLEN KLEIN,** | |
| Defendant. | |

## INTRODUCTION

Johnathanpeter Klein, through counsel, seeks release pending the resolution of his above-captioned matter on conditions of home detention and whatever other conditions the Court deems appropriate pursuant to the Bail Reform Act, 18 U.S.C. § 3142.  Mr. Klein would be neither a flight risk nor a danger to the community if released on conditions.  Counsel has provided pretrial services with the needed information and has also made the government aware of the proposed release plan.

Mr. Klein is charged by Indictment with: Conspiracy, in violation of 18 U.S.C. § 371; Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §

Case 1:21-cr-00237-RDM   Document 34   Filed 05/11/21   Page 2 of 8

1512(c)(2) and 18 U.S.C. § 2; Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 2; Destruction of Government Property and Aiding and Abetting, in violation of 18 U.S.C. § 1361 and 18 U.S.C. § 2; Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1), and; Disorderly Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a). Each of these alleged offenses stem from the events at the U.S. Capitol on January 6, 2021. Mr. Klein requested release from the magistrate judge on March 26, 2021, which was denied. On April 1, 2021, Mr. Klein appeared before this Court, and a status hearing was initially set for May 7, 2021. The defense has requested that this hearing be continued to May 13, 2021.

Mr. Klein has no history of violence and no prior convictions. Rather, despite his young age, he has a long history of working, volunteering to help his community, and keeping close connections to his extensive family and friends. If released, Mr. Klein would reside with ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ where he anticipates finding employment quickly. The ▇▇▇▇▇▇ are already looking forward to having his help around the house as they have several work projects in mind. In addition to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Mr. Klein requests that the Court fashion conditions requiring that he: submit to electronic GPS location monitoring on a home detention schedule, requiring that he remain at home at the ▇▇▇▇▇▇▇ except for employment, medical appointments, education, and other events as approved by the pretrial services officer; not possess a firearm, destructive device, or other dangerous weapon; refrain from traveling to the District of Columbia, except as directed by the Court; turn over his passport to Pretrial Services; submit to the supervision of the Pretrial Services office as directed; submit to home visits by Pretrial Services; not use alcohol excessively, and not

Page 2 - MOTION FOR RELEASE TO HOME DETENTION

use or possess any controlled substance, and; submit to drug testing if required by Pretrial Services. In addition, Mr. Klein expects to sign a release of information with Pretrial Services so that the ▆▆▆▆▆ and Pretrial Services can speak freely about how Mr. Klein is doing on pretrial release. Because four adults live in the home, it is anticipated that there will always be an adult home overnight with Mr. Klein. Mr. Klein agrees to abide by these and any other conditions the Court believes necessary to ensure his return to Court and the safety of the community.

**ARGUMENT**

### The Applicable Legal Standard

The Bail Reform Act requires courts to release defendants pending trial on personal recognizance or on an unsecured appearance bond unless the government has presented clear and convincing evidence that there are no conditions that will "reasonably assure the appearance of the person as required or . . . the safety of any other person or the community." 18 U.S.C. §§ 3142(b), 3142(f)(2)(B). In other words, "the default position of the law . . . is that a defendant should be release pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). In another case involving the events on January 6, 2021, the D.C. Circuit Court held, "we have a great constitutional obligation to ensure that the facts and circumstances of each case warrant this exceptional [pretrial detention] treatment. *United States v. Munchel*, 991 F.3d 1273, 1285 (D.C. Cir. 2021).

Defendants who are charged with certain specified offenses are subject to a rebuttable presumption that no condition, or combination of conditions, can assure the defendant's appearance or ensure the safety of the community, *see* 18 U.S.C. § 3142(e). When there is no

rebuttable presumption, the presumption is that the defendant will be released pending trial unless the government can prove by clear and convincing evidence that pretrial detention is the only means by which the community's safety can be assured, 18 U.S.C. § 3142(f)(2)(B); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996), or can prove by a preponderance of the evidence that no conditions of release can assure the defendant's appearance at future court hearings. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988); *United States v. Hassanshahi*, 989 F. Supp. 2d 110 (D.D.C. 2013). Even when there is a rebuttable presumption, it does not require that the defendant carry the burden of proof or persuasion but rather, the defendant must only "offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). "A defendant's burden of production to rebut the Bail Reform Act's presumption of detention is not heavy." *United States v. Dabney*, 2020 WL 1867750 at *2 (D.D.C. 2020) (finding presumption rebutted with strong ties to the community, family support and lack of adult criminal history); *see also United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). "Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *Id*.

In determining whether there are conditions that can protect a person or the community, or a combination of conditions that can assure the defendant's appearance, courts consider four factors: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence; (3) the defendant's character, including his physical and mental condition, family and community ties, past conduct, drug and alcohol abuse, and criminal history, and; (4) the nature and seriousness of the danger posed to any person by release. 18 U.S.C. § 3142(g). When imposing a condition, or combination of conditions, the court must select the "least restrictive" conditions. 18 U.S.C. §

3142(c)(1)(B). It is also important to consider the COVID-19 pandemic and its impact on Mr. Klein should he be detained.

Considering all of the relevant factors, Mr. Klein's release under the proposed conditions would meet the purposes of the Bail Reform Act.

**The Nature and Circumstances of the Offenses Charged**

The events of January 6th, and Mr. Klein's participation in those events—some participation completely appropriate and permitted by the Constitution, and some participation as alleged and described by the government and not yet proven—was a moment in history that has now passed. In the last four months, the events have not been repeated, nor is there another planned presidential call to duty for protestors and supporters of former President Trump to present themselves for a perceived patriotic required action. The charges alleged against Mr. Klein are broad and sweeping. The government's actual focus appears to be Mr. Klein's entering and remaining in the Capitol building for approximately 10 minutes, and a very short time frame within which Mr. Klein is alleged to have participated with others in opening a door to the building. Even the government's evidence reflects Mr. Klein immediately turning around and walking away from the opened door and that location. Although the door was opened, it was never breached by the protestors due to the necessary presence of law enforcement officers. There is no allegation of any violence towards officers, no allegation of any vandalism within the Capitol Building, no allegation of any encouragement to others present to engage in violent or destructive behavior. ▮

███████████████████████████████████████

**The Weight of the Evidence Against the Defendant**

The weight of the evidence of Mr. Klein's lawful presence in Washington D.C. and at former President Trump's rally is strong. The weight of the evidence as to the individualized

Page 5 - MOTION FOR RELEASE TO HOME DETENTION

alleged criminal behavior of Mr. Klein is not—particularly when compared to the broad and sweeping charges brought in this case. The weight and evidence set forth thus far appears to be narrow and distinguishable from many other people alleged to have injured law enforcement officers, vandalized the inside of the Capitol Building, organized a breach of the Capitol Building, or organized or encouraged others to engage in criminal behavior. Particularly in comparison to others charged as a result of this event, and who have been released, Mr. Klein is very distinguishable. *See, e.g., United States v. Klein*, 2021 WL 1377128 (D.D.C. Apr. 12, 2021) (no relation) Here, Mr. Klein had no weapons, no expressions of organization, or a willingness to go down fighting, and he did not engage in any physical violence against another person. Rather, part of the evidence set forth by the government also includes Mr. Klein immediately stepping back and turning around and walking away from the door he is alleged to have opened. There is no evidence to support the conclusion that Mr. Klein would disobey any order of the Court intended to protect community safety should he be granted pretrial release.

### The History and Characteristics of Mr. Klein Support a Finding that There is No Danger Posed to any Person or the Community with his Release

Mr. Klein has no criminal history. Much of his youth was spent out of the country with his missionary family. He has worked since the approximate age of 14. That continued when he moved back to the United States with his family in February 2020, at the start of the pandemic. Unlike many other people, Mr. Klein gained and kept employment during the pandemic, right up until his arrest. He first worked as a roofer, and then he worked part-time as a roofer and held a second job as a delivery driver for Dominos Pizza. In mid-January 2021, Mr. Klein began employment on a ranch.

While Mr. Klein lived in the Portland, Oregon area, like many others he became increasingly concerned about the protests and destruction of courthouses, government buildings

and private businesses during the summer and fall of 2020. Mr. Klein tried to find a way to show his rejection for that continued behavior – that resulted in his presence at several conservative rallies and ultimately his desire to support former President Trump in Washington D.C. on January 6, 2021. When Mr. Klein returned to Oregon, he was shaken by the violence he witnessed in D.C. In order to think about his future, Mr. Klein removed himself from the Portland area and went to work with his sibling on a ranch in rural Oregon. In considering where he would excel on release, Mr. Klein initially hoped to return to the ranch, as he has a strong aptitude for the work, and because his employer/landlord is extremely supportive of him and his future. <u>Unfortunately, it is in such a remote area that the reasonable location monitoring condition appeared to be impractical there.</u> Therefore, Mr. Klein requests release to ███████████████████████████████. The ███████ are long-time family friends. ███████ is a rural area, but still large enough to allow Mr. Klein to continue his strong employment history.

Even if the government's most serious allegations are true, given Mr. Klein's history, there is no perceived danger from Mr. Klein if he is released within the proposed release plan at this time. *See Klein*, 2021 WL 1377128, at *13 (D.D.C. Apr. 12, 2021); *Munchel*, 991 F.3d at 1283-84.

**CONCLUSION**

Bail conditions including home confinement through electronic GPS monitoring, would be sufficient to mitigate any risk to the community and to secure Mr. Klein's appearance in Court.

For all of the reasons stated above, the Court should release Mr. Klein on restrictive home confinement.

      RESPECTFULLY SUBMITTED this 6th day of May, 2021.

                                                */s/ Michelle Sweet*
                                                Michelle Sweet
                                                Attorney for Defendant