**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 21-cr-237-1 (RDM)** |
|  | : |  |
| **v.** | : | **18 U.S.C. § 231(a)(3) (Civil Disorder);** |
|  | : | **18 U.S.C. § 111(a) (Assault on Certain** |
| **JONATHANPETER ALLEN KLEIN,** | : | **Officers).** |
|  | : |  |
| **Defendant.** |  |  |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Jonathanpeter Allen Klein, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by

approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.      On December 27, 2020, Jonathanpeter Klein (the "Defendant") texted his employer that he and his brother (co-defendant Matthew Leland Klein) "are going to [the] stop the steal rally in D.C. I would like to have the 4th of January 50 the 8th of January off please." Defendant and Matthew Klein then flew from Portland, Oregon to Philadelphia, Pennsylvania on January 4, 2021 and returned on January 8, 2021.

9.      After attending former President Trump's Stop the Steal rally, Defendant marched towards the U.S. Capitol Building and entered into the Restricted Area of the Capitol Grounds, which was closed to the public that day.

10.     On January 6, 2021, there was construction equipment and audio visual equipment staged on Capitol Grounds in preparation for the Presidential Inauguration, which was planned for January 20, 2021. Certain rioters in the crowd used the equipment to assault officers.

11.     A few minutes before 2:00 p.m., a Metropolitan Police Department (MPD) unit
arrived at the Northwest edge of the grounds in order to assist and reinforce U.S. Capitol Police
(USCP), who were outnumbered by the amassing crowd on the West Plaza of the Capitol. All of
these officers were wearing their official MPD uniforms that clearly identified them as law
enforcement officers. The MPD officers organized themselves into a two-line formation and then
attempted to make their way through the crowd to reach other law enforcement on the West
Plaza police line. The MPD officers were  attempting to move through the dense crowd while
verbally directing unauthorized persons to move aside to let the officers pass.

12.     Defendant threw a lid for audio visual equipment at the line of MPD officers. *See*
Image 1.



*Image 1 (top circle around the object thrown; bottom circle identifies Defendant)*

13.     The object directly hit MPD Officer N.S. in the helmet. Body worn camera
footage shows that the impact of the blow caused Officer N.S. to stumble, and that other officers

needed to assist Officer N.S. in regaining his footing. The lid left a visible dent in Officer N.S.'s

helmet. *See* Images 2-5.



*Image 2 (depicting the object thrown by Defendant just before impact with Officer N.S.'s helmet)*



*Image 3 (impact of the thrown object with Officer N.S.'s helmet)*



*Image 4 (Officer N.S. ducking and stumbling from the impact)*



*Image 5 (Officer N.S. stumbling after the impact; other officers attempt to assist)*

14.     Officer N.S. would testify that the blow to his head caused him to momentarily lose consciousness and that he required the assistance of another officer to avoid falling.

15.     The first breach of the Capitol occurred at approximately 2:12 p.m. when rioters broke open windows adjacent to the Senate Wing Door. Defendant entered the Capitol Building through the Senate Wing Door at approximately 2:16 p.m. Defendant became separated from Matthew shortly after they entered the building. While inside the building, he traversed most of the building. Having entered on the Senate side of the building, he travelled to the Rotunda, the crypt, and to the House side of the building. *See Images 6-9.*



*Image 6*



*Image 7*



*Image 8*



*Image 9*

16.     After exiting the building, Defendant and other rioters approached another door on the north side of the Building (the "North Door"). Defendant reconnected with Matthew [near the door].

17.     Law enforcement officers were assembled just inside the North Door in order to prevent a further beach of the building. Defendant joined Matthew and other rioters in pulling

forcefully on the door handle. Through these efforts, Defendant and the other rioters forced the door open.  *See* Images 10-11.



*Image 10*



*Image 11*

18.     Defendant's conduct, as described above, took place during a civil disorder. The events on the Grounds of the U.S. Capitol and inside the U.S. Capitol Building constituted a "civil disorder," as that term is used in 18 U.S.C. § 231(a)(3), because the events created a public disturbance involving acts of violence by assemblages of three or more persons, which caused an immediate danger of or resulted in damage or injury to the property or person of another individual.

19.     Moreover, the civil disorder on the Grounds of the U.S. Capitol and in the U.S. Capitol building on January 6, 2021, as described in paragraph 18 obstructed, delayed, and adversely affected commerce or the movement of any article or commodity in commerce as those terms are used in Title 18, United States Code, Section 231(a)(3). In particular, the civil disorder adversely affected the sales of Safeway grocery stores within the District of Columbia, whose products travel in interstate commerce before being sold in the District.

20.     The civil disorder on the Grounds of the U.S. Capitol described in paragraph 18 also obstructed, delayed, and adversely affected the performance of federally protected functions,

including the Secret Service's protection of the Vice President and his immediate family, and the orderly protection of the U.S. Capitol Building by U.S. Capitol Police.

21.     All of the law enforcement officers with whom the defendant interacted were lawfully engaged in the lawful performance of their official duties (*i.e.*, engaged in the enforcement of the criminal laws of the United States), incident to and during the commission of this civil disorder, which included assisting the USCP to secure the U.S. Capitol.

### *Elements of the Offense*

22.     The parties agree that 18 U.S.C. § 111(a) requires the following elements:

a.  First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with MPD Officer N.S.

b.  Second, the defendant did such acts forcibly.

c.  Third, the defendant did such acts voluntarily and intentionally.

d.  Fourth, at the time of the assault, MPD officers, including Officer N.S., were assisting officers of the United States who were then engaged in the performance of their official duties.

e.  Fifth, the defendant made physical contact with Officer N.S.

23.     The parties agree that 18 U.S.C. § 231(a)(3) requires the following elements:

a.  First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with officers assembled at the North Door of the Capitol Building.

b.  Second, at the time of the defendant's act, those officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

c.  Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce and the conduct or performance of any federally protected function.

### *Defendant's Acknowledgments*

24.     Defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, Defendant admits that he forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer N.S. and made physical contact with Officer N.S.'s person while Officer N.S. was assisting officers of the United States engaged in the performance of their official duties. Defendant admits that he took this action with the intent to commit another felony, *i.e.*, to obstruct, impede, or interfere with officers who were engaged in the lawful performance of their official duties incident to and during a civil disorder, in violation of 18 U.S.C. § 231.

25.     The defendant also admits that he obstructed officers at the North Door while they were lawfully engaged in the lawful performance of their official duties, incident to and during the commission of a civil disorder that obstructed interstate commerce and the performance of federally protected functions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Katherine E. Boyles*
        KATHERINE E. BOYLES
        Assistant U.S. Attorney
        D. Conn. Fed. Bar No. PHV20325
        601 D Street, N.W.
        Washington, D.C. 20579
        (203) 931-5088
        Katherine.boyles@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Jonathanpeter Allen Klein, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 04/18/2024

_____
Jonathanpeter Allen Klein
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: April 18, 2024

_____
Michelle Sweet
Attorney for Defendant