UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 21-cr-237-2 (RDM) |
| | : | |
| v. | : | |
| | : | |
| JONATHANPETER ALLEN KLEIN | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Jonathanpeter Allen Klein to a term of imprisonment of 26 months, three years of supervised release, $3,000 in restitution, a fine, and a special assessment of $200.

### I.     INTRODUCTION

The defendant, Jonathanpeter Klein, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

1

Klein travelled with his brother Matthew to the Washington, D.C. area to attend then-President Trump's "Stop the Steal" rally on January 6. They attended the rally, and then marched with other protesters towards the U.S. Capitol Building and entered the Restricted Area of the Capitol Grounds, which was closed to the public that day.

Once on Capitol Grounds, Klein assaulted a Metropolitan Police Department ("MPD") officer by throwing a lid to an audio visual equipment box at a line of officers responding to the violent mob's siege of the Capitol Building. Approximately fifteen minutes later, Klein unlawfully entered the Capitol Building, along with the first wave of rioters to do so. While inside, he traversed most of the building, including the Rotunda, the Crypt, and the House side of the building. After leaving the building, Klein worked with other rioters to force open the North Door against the effort of law enforcement attempting keep the door shut.

The government recommends that the Court sentence Klein to 26 months of incarceration. A 26-month sentence reflects the gravity of Klein's conduct, but also acknowledges his early admission of guilt and acceptance of responsibility for his conduct.

## II.   FACTUAL BACKGROUND

### A.   The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, Doc. 160, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B. Jonathanpeter Klein's Role in the January 6, 2021, Attack on the Capitol

*Pre-January 6 Activities*

On December 27, 2020, Klein texted his employer that he and his brother, co-defendant Matthew Leland Klein, "are going to [the] stop the steal rally in D.C. I would like to have the 4th of January to the 8th of January off please." Klein and his brother then flew from Portland, Oregon to Philadelphia, Pennsylvania on January 4, 2021, and returned on January 8, 2021.

On January 5, 2021, Klein attended a rally in support of then-President Trump at the Supreme Court. He wore jeans, a black shirt with the initials for the Portland ("PDX") chapter of the Proud Boys, an American flag neck gaiter, and a black baseball cap, just as he would on January 6, 2021. *See* Image 1.



*Image 1: Matthew (left) and Jonathanpeter (right) Klein on January 5, 2021*

***Participation in the Capitol Riot on January 6***

Klein took an active role in the siege of the Capitol Building on January 6, 2021. After attending then-President Trump's Stop the Steal rally, Klein marched towards the United States Capitol Building and entered the restricted area of the Capitol Grounds.

At roughly 2:00 p.m., Klein assaulted a police officer by throwing an audio-visual equipment container lid at a line of MPD officers from the Civil Disorder Unit ("CDU"). *See* Image 2; *see also* Exhibit 1. This line of MPD officers was responding to the Capitol to support and reinforce Capitol Police officers who were overwhelmingly outnumbered by the rioters. In assaulting an officer at this time, Klein not only harmed the individual officer that he hit with the lid, but he also delayed the unit's ability to provide much needed reinforcements on the west side of the Capitol.



*Image 2 (top circle around the object thrown; bottom circle identifies Klein)*

The lid struck MPD Officer N.S.'s helmet. Body-worn camera footage shows how the impact of the blow caused Officer N.S. to stumble, and that his fellow officers needed to assist Officer N.S. in regaining his footing. *See* Images 3-6.



*Image 3 (depicting the object thrown by Defendant just before impact with Officer N.S.'s helmet)*



*Image 4 (impact of the thrown object with Officer N.S.'s helmet)*

5



*Image 5 (Officer N.S. ducking and stumbling from the impact)*



*Image 6 (Officer N.S. stumbling after the impact; other officers attempt to assist)*

The blow to his head caused Officer N.S. to momentarily lose consciousness, and he required the assistance of another officer to avoid falling. As Officer N.S. put it, if not for his helmet, he would "not be here right now." Officer N.S. believed he had suffered a concussion and was sore for a couple of weeks after January 6. Though Officer N.S. did not seek medical treatment for the hit to his head, he was significantly impacted emotionally and mentally from what happened

on January 6; he says that he thinks about that day all the time and that he did not believe he was going to make it home.

### *Unlawful Entries to the US Capitol*

The first breach of the Capitol Building itself occurred at approximately 2:12 p.m. when rioters broke open windows adjacent to the Senate Wing Door. Klein entered the Capitol Building through the Senate Wing Door just four minutes later, at approximately 2:16 p.m. After entering the building, Klein physically embraced two other rioters and displayed a Proud Boys hand signal in celebration of their unlawful entry. *See* Image 7.

Inside the building, Klein became separated from his brother Matthew and followed the crowd throughout much of the building. Having entered on the Senate side of the building, he travelled to the Rotunda, the Crypt, and to the House side of the building. While inside the building, Klein used his cell phone to record the unfolding events.



*Image 7 depicting Klein flashing a Proud Boys hand signal to other rioters shortly after unlawfully entering the building*

After exiting the building, Klein reconnected with his brother Matthew and approached another door on the north side of the building (the "North Door"). There, U.S. Capitol Police officers were conspicuously assembled to prevent a further beach of the building. Klein joined his brother and other rioters in forcefully yanking the door open, causing damage to the door—estimated by the Architect of the Capitol to be in excess of $10,000—and exposing officers to the violent mob. *See* Images 8, 9; Exhibit 2.



*Image 8: Klein forcing the North Door open*



*Image 9: Klein forcing the North Door open*

### III.   THE CHARGES AND PLEA AGREEMENT

On December 1, 2021, a federal grand jury in the United States District Court for the District Court returned a six-count Superseding Indictment charging Klein with Conspiracy, in violation of 18 U.S.C. § 371 (Count One); Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Two); Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count Three); Destruction of Government Property and Aiding and Abetting, in violation of 18 U.S.C. §§ 1361 and 2 (Count Four); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Five); and Disorderly Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Six).

On July 15, 2024, the United States Attorney for the District of Columbia filed a two-count Second Superseding Information charging Klein with Civil Disorder, in violation of 18 U.S.C.

9

§ 231(a)(3) (Count One) and Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1) (Count Two).

On July 17, 2024, Klein pled guilty to both counts of the Second Superseding Information pursuant to a written plea agreement and Rule 11(c)(1)(B).

### IV. STATUTORY PENALTIES

Klein now faces sentencing on Count One, Civil Disorder, in violation of 18 U.S.C. § 231; and Count Two, Assault on Certain Officers, in violation of 18 U.S.C. § 111(a).

As noted by the Plea Agreement and the Presentence Investigation Report, under Count One, the Defendant faces a maximum sentence of five years of imprisonment, a fine of $250,000 or twice the pecuniary gain or loss of the offense, a term of supervised release of not more than three years, and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. Count Two carries a maximum sentence of eight years of imprisonment, a fine of $250,000 or twice the pecuniary gain or loss of the offense, a term of supervised release of not more than three years, and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. The defendant also must pay a $100 special assessment per felony conviction.

### V. THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Under the plea agreement, the parties agreed that the following Sentencing Guidelines apply:

| Count 1: | 18 U.S.C. § 231(a)(3) | | | |
|---|---|---|---|---|
| | U.S.S.G § 2A2.4(a) | Base Offense Level | | 10 |
| | | | **Total** | **10** |
| Count 2: | 18 U.S.C. § 111(a) | | | |
| | U.S.S.G § 2A2.4(a) | Base Offense Level | | 14 |
| | U.S.S.G § 3A1.2(a),(b) | *Official Victim Adjustment* | | +6 |
| | | | **Total** | **20** |
| | | Acceptance of Responsibility | | -3 |
| | | **Total Adjusted Offense Level** | | **17** |

*See* Plea Agreement at 3.

"Zero Point Offender" Adjustment under U.S.S.G. § 4Cl.1

The parties agreed in the plea agreement that Klein is not eligible for a zero-point offender adjustment pursuant to U.S.S.G. § 4C1.1(a)(3), because he used violence or credible threats of violence in connection with the offense. *See* Plea Agreement at 4. In the Statement of Offense, Klein conceded that he was responsible for throwing the object identified as an "audiovisual equipment lid," which struck Officer N.S. in the head. *See* Statement of Offense at 10.

Dangerous Weapon Enhancement

The government notes that the Probation Office's recommendation includes a dangerous weapon enhancement under U.S.S.G. § 2A2.2(b)(2)(B), which is not included in the Plea Agreement. The Government is not seeking such an enhancement and will not argue for such an enhancement at sentencing, consistent with the plea agreement.

Estimated Guidelines Range

Based upon the parties' contemplated guidelines in the plea agreement reflecting an

11

offense level of 17 and criminal history category I, Klein's estimated Sentencing Guidelines range is 24 to 30 months.

## VI. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A. Nature and Circumstances of the Offense

As discussed in Section II(B) of this memorandum, Klein's felonious conduct on January 6, 2021, was part of a massive riot that nearly succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Klein forcibly assaulted police officers charged with defending the Capitol from the rioters and contributed to those officers' delay in being able to quickly reinforce the police line on the west plaza. Later, he unlawfully entered the Capitol Building and thereby actively prevented the resumption of the certification of the electoral college vote. More, he was not satisfied with his initial assault on officers and breach of the Capitol Building; he later wrenched open the North Door, putting the officers guarding that door in peril and opening up another avenue for rioters to unlawfully enter the building.

The nature and circumstances of Jonathanpeter Klein's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 26 months.

### B. The History and Characteristics of the Defendant

Klein was 21 years old on January 6, 2021 and is now 24 years old. Unlike many criminal defendants, Klein enjoyed a stable upbringing within a close-knit family. Indeed, his participation in the siege of the Capitol on January 6 was something of a family affair – he travelled to the east

coast from Oregon with his brother, Matthew, and the brothers stayed overnight with their sister before attending multiple rallies in Washington, D.C. over January 5 and 6.

Klein has no criminal history; his crimes on January 6 appear to be an isolated event in an otherwise law-abiding and family-oriented life. In general, there is very little in his background that excuses his culpability for his criminal conduct on January 6.

Klein did, however, accept responsibility for his conduct relatively early in this case. Though his case remained pending before this Court for a period of years, the delays in the resolution of this case were due to factors outside of his control.

C. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Klein's criminal conduct on January 6 was a demonstration of disrespect for the law and the American democratic process. As clearly illustrated in *United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

D. **The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[2] The demands of general

---

[2] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this defendant also weighs in favor of a term of incarceration. Although the defendant has a criminal history category of I, his gravitation toward extremist organizations coupled with his willingness to travel cross-country to disrupt the democratic process signals a naivete, and susceptibility to coercion for similar acts of civil disorder and political violence. On the other hand, to his credit, Klein very quickly accepted responsibility for his conduct and almost immediately engaged the government in plea negotiations after he was charged.

### E.    The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

F.       **Unwarranted Sentencing Disparities**

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently— differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v.*

15

*Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[3] "When an offense is uniquely serious, courts will consider the need to impose stiffer sentences that justify the risk of potential disparities." *United States v. Mattea*, 895 F.3d 762, 768–69 (D.C. Cir. 2018) (cleaned up).

Although the other defendant discussed below also participated in the Capitol breach on January 6, 2021, many notable differences explain the differing recommendations and sentences.[4] While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following case provides a suitable comparison to the relevant sentencing considerations in this case.

Klein's conduct is comparable to that of Jacob Zerkle, 22-cr-100 (RBW). Zerkle also assaulted MPD officers on the west plaza, specifically members of Civil Disorder Unit 42, the same unit that Klein assaulted. Like Klein, Zerkle pled guilty to assaulting officers, in violation of § 111(a), as well as interfering with officers during a civil disorder, in violation of § 231(a)(3). Their most serious conduct – assaulting officers and interfering with officers' ability to protect the Capitol – was similar, though Klein actually entered the Capitol Building *and* wrenched the North Door open, while Zerkle's conduct was limited to the west plaza. At sentencing, the Court determined that Zerkle's guidelines range was also 24-30 months, based on a similar guidelines calculation as is present here, and Judge Walton sentenced Zerkle to 24 months of incarceration.

---

[3] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the Government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

## VII.     RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. Klein is accountable for some of this damage, as his attempts to forcibly open a door on the north side of the Capitol Building resulted in structural damage to that door. Thus, pursuant to the plea agreement and as permitted under 18 U.S.C. § 3663(a)(3), Klein has agreed to pay $1,000 in restitution for the damage to the door and an additional $2,000 in restitution for

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

17

his contribution to the aggregate damage to the Capitol Building. Klein has already made this payment to the Clerk of the Court.

## VIII.   FINE

Klein's convictions for violations of 18 U.S.C. § 231(a)(3) and 111(a)(1) subject him to a statutory maximum fine of $250,000 for Count One and $100,000 for Count Two. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). The Sentencing Guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, Klein has not shown an inability to pay. Thus, pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e). The guidelines fine range here is $2,000 to $20,000. U.S.S.G. § 5E1.2(c).

## IX.   CONCLUSION

For the reasons set forth above, the Government recommends that the Court impose a sentence of 26 months of imprisonment, three years of supervised release, a fine within the range of $10,000 to $95,000; $3,000 in restitution; and a special assessment of $200 ($100 per felony conviction).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Katherine E. Boyles
Katherine Boyles
Assistant United States Attorney
D. Conn. Fed. Bar No. PHV20325
United States Attorney's Office
601 D Street NW
Washington, D.C. 20001
Katherine.Boyles@usdoj.gov
Phone: 203-931-5088

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Katherine E. Boyles
Katherine Boyles
Assistant United States Attorney
D. Conn. Fed. Bar No. PHV20325
United States Attorney's Office
601 D Street NW
Washington, D.C. 20001
Katherine.Boyles@usdoj.gov
Phone: 203-931-5088